This docket is clause number 23-60080, Sandoval Argueta v. Pamela Bondi. Is the appellant ready to proceed? Yes, sir. You may. May it please the Court, Noah Feldman on behalf of Petitioner Eric Sandoval Argueta. Judges, I first want to address the BIA's errors in the rule of orderliness and then move on to lope or bright, if time permits. The BIA erred here, judges, in finding Petitioner's Texas Online solicitation of a minor conviction was a crime of child abuse, and this Court's rule of orderliness does not preclude it from saying so. Specifically, the BIA erred in not applying matter of humana sedio, just as it had in at least two unpublished decisions, where it found that Texas Online solicitation of a minor involving a fictitious minor was not a crime of child abuse. Well, it sort of noted it. That is correct. It was really, that case was about moral turpitude, and basically the child abuse line was right at the end of the opinion, and almost a throw, it says what it says. But it was almost a throwaway line. Did they really change their position in Jimenez? I don't believe they changed their position, Judge, but I do believe that they reaffirmed their longstanding position. Well, but you've got a problem with ADECO, and it's not just that we held what we held in ADECO. I've reacquainted myself with that case now, since I guess I was the writing judge on that   But in ADECO, the BIA had concluded that this statute was a categorical match, and we basically deferred to their definition of child abuse, very broad, but they had already found it was a categorical match, so how do you square those things? Yes, Judge. Well, the underlying BIA decision in ADECO was an unpublished decision, and it was issued, that underlying decision was issued before the BIA published Jimenez. I mean, I get that, but they didn't acknowledge it. They didn't acknowledge anything in the past, but they reached the opposite conclusion. That is correct, Judge, and in various unpublished decisions, they've reached differing arguments, but this court in ADECO did not have that inconsistency before it. Jimenez was published after a briefing was closed. You had a pro se petitioner. He never raised the fictitious minor argument. Now, Chevron is overruled, but when this court decides whether to grant Chevron to an agency, the consistency of an agency's position is a primary consideration, and the inconsistency that you just alluded to was not before the court in ADECO. No circuits adopted Jimenez. There is no positive authority for it. That suggests maybe the afterthought is just an afterthought. Judge, I believe there's no positive or negative authority, because remember, if the . . . It's sort of just frozen. It was a unique afterthought comment, but I guess maybe I'm not really sure Jimenez is relevant at all. We have ADECO, right or wrong, briefed or not, not even sure if there was an actual child in it. Do you happen to know that? In ADECO, I know the record, it was not an actual child in it. It was not, so it was the same issue. Okay, so it's the same issue. Published opinion, there it is, is the only way out of the lockbox for you, either some estoppel theory or Loper-Bright means we've got to do our own best reading. Which of the two, and are those the two, if you had to pick your poison, which of the two? Well, I think Loper-Bright is the stronger argument. Okay, so that really makes you have to address their contention. Do you have any circuit authority that says that a prior decision that did have Chevron deference baked into it, Garcia and ADECO, are ones that we can't follow? What are you saying about Loper-Bright? It might have allowed us to offer a view different from that one, but it doesn't require us to given the court's statement, correct? That is correct, Judge, but Loper-Bright unequivocally overrules the analysis that this court did in ADECO, right? Because as Judge Wilson— But if we're not deferring, wouldn't that strengthen ADECO's precedential value? In other words, we were deferring there to their definition. If we don't defer, we would just go through the categorical match analysis and maybe reach the same exact conclusion, unfettered by Chevron deference. That is true, Judge, and Petitioner would welcome this court to, you know, do the plain language analysis on the crime of child abuse, crime of child abandonment— Most courts say child abuse is a phrase that's pretty capacious, therefore ambiguous. Your position is child abuse requires that the child actually be abused. Why doesn't it suffice that you have an abuser that believed, wanted to, and took steps towards abusing what he thought was a child? Well, I think the key thing is to go back to the statutory text when it was enacted. Now, in 1996, Congress passed a law that said if you've committed a crime of child abuse, child abandonment, or child neglect, you are deportable. Now, in Velazquez-Herrera, which was a 2008 case, the seminal BIA case, where they come up with this broad, extremely broad definition of that statute, they surveyed the state statutes and the federal statutes in existence in 1996, and none of those statutes included a putative or fictitious minor like the one here. That's a really good question to me. I mean, I appreciate it, and it's in your brief, but I'm just asking you a simple question. Has any circuit ever said someone who pleads that they intended to sexually assault a child and went to meet that child has not committed child abuse? Well, I would say— Does it require that the child actually be sexually assaulted? I'd say—I'd give two answers to that question, Judge. The first one is that the minimum conduct prescribed by this statute does not require the actor to make any movements towards the child, right? The completed act of the solicitation— Communication in the intent, right? Correct. And even if you withdraw from that intent immediately after, the offense is already complete. But the second answer to that question is this Court has addressed similar statutes in different contexts, both in a case, United States v. Rivas, I think, and United States v. Farner, which are in our briefs, which found that such a crime would only be attempted sexual abuse of a child. Well, so we can't deport for attempts with the requisite intent. We've got to let them succeed. Well, Judge, just the fact that this crime— Is this the perversity of that dichotomy? Yes, Judge, but we need to focus on the plain language of the statute. Now, even looking at the Texas Family Code, right? Texas Family Code 261.101, I think, defines abuse. This wouldn't qualify as child abuse under the Texas Family Code. I guess I'm still going to ask my same question. Has any circuit ever said someone who pleads guilty to solicitation of a minor for sex isn't— that's not sufficient to show child abuse? Has any circuit said that? Under this statute. Well, frankly, I'm open to virtually any statute. I mean, I would say this Court has said that in Shroff, in Farner, in Rivas. In Shroff, we said it was a crime of moral turpitude, correct? In Shroff, we did. That was the Esquivel case. Isn't Shroff an Esquivel case? Shroff. I believe that might be correct, but I'm referencing the footnote in Shroff that said it wouldn't be sexual abuse of a minor. It would only be sexual abuse of a minor through attempted sexual abuse of a minor. That Immigration and Nationality Act has an aggravated felony definition. Best authority is authority is Shroff, which was a footnote. So the answer is there's no court that hasn't said this crime is child abuse. And that's correct, Judge, and there's no court that has said it. Because remember, when the BIA, you know, in at least two unpublished decisions before ADECO, applied Jimenez and found that this crime was not a crime of child abuse, those cases don't travel up to the circuit, right? So we never get a circuit split on those cases. Villegas-Lopez. That's correct, Judge. Unpublished but persuasive value, and it doubles down on the ADECO rule, not the Jimenez rule. That's correct, Judge. Honestly, I believe that case sidestepped the Chevron, I mean, Chenery Doctrine. Because if you look at the reasoning in that case, it's not citing to what the BIA actually did. It's citing to a government brief, which within that case, if you go into the record, was actually a DHS brief that was submitted to the BIA that the BIA never adopted. Instead, the BIA simply applied ADECO. You've heard this well, and this area of law is nuanced. He's lucky to have you as a lawyer, a lot of supplemental findings. But to use an expression that I was saying to my law clerks before, just take us around the basis. You're saying what? We are not bound by ADECO because of Loeb or Bright. You're not bound. And the best reading of child abuse, finish the sentence. The best reading of child abuse is that it doesn't involve offenses that never involved actual children. But this one did. There's no, the whole reason he pled is because he thought he was going to go meet a minor. How can you say it didn't involve a child? That was what the abuser's intent was. He pled to that. There was no actual child harmed? Or tootie, thank goodness. He was getting stung. Yes, Judge. But if you look at the plain language, I mean, look up child abuse in dictionaries commonly cited by the Supreme Court. Black's Law Dictionary, Merriam-Webster's Dictionary. If that were the plain language, you'd think there'd be some court somewhere that would have said it. Instead, what we've got is the BIA in a final afterthought after being rebuked by the Fourth Circuit hints at it. Respectfully, Judge, I don't believe they hinted at it. It lacked as much analysis as I would prefer. And I'm just pressing you, and I promise I'll press the government. But when they adhere to ADECO here, they didn't say, oh, but for. Gosh, the Fifth Circuit has told us we have to think that way. They didn't even intimate that they were right before, right? When I look at the BIA here, no one there is saying, you know, we think we were right before. They're just saying ADECO's right. That's not the way I read the BIA decision, Judge. If you look at the record in the BIA decision, the BIA acknowledged our argument that they have and should apply. That's the direct quote. Have and should apply, hymena sedio, to distinguishing between actual and putative minors. Then they go on to say, but this court's decision in ADECO postdated hymena sedio, and so it was going to apply ADECO. Now, the ruling here says the opposite of what I just said. That's how I read it, Judge. Good for you. I'm not remembering exactly. They said we wish, we think the right reading is hymenas, but the Fifth Circuit, we got to follow them. Is that what they say? It's ambiguous. I'm not going to say they think the right reading is hymenas. They say they acknowledged our argument that they have and should distinguish between actual and putative minors. And then they go on to say, but ADECO was issued after publication of hymena sedio. And that was one of our main arguments in terms of the BIA's errors, right? Because it's well known that the ordering of the decisions should not matter, right? Brand X tells us order doesn't matter. And it's completely- I think the issue is, isn't the BIA bound by our precedent? That's exactly what the Attorney General argues, Judge, but that's not true. The BIA is bound by its regulations that say it's got to apply its own precedent until and unless it's modified or overruled. It has been. I mean, that's what ADECO did, arguably. I mean, I would submit we followed what the BIA was doing in ADECO. If ADECO overruled hymenas, then I agree this court should apply ADECO. I don't believe ADECO overruled hymenas, and I don't see the government arguing that. They're inconsistent. They're inconsistent. What do you do with an inconsistent BIA decision and Fifth Circuit decision? Which one controls? Good question, Judge. And matter of Fajardo-Espinoza, which is cited in my reply brief, addresses that exact scenario and is much more on point than the other questions you mentioned. Matter of Fajardo-Espinoza says when we have a BIA precedential decision that conflicts with applicable circuit court precedent, we ask. Sorry, looking at my time. We ask whether the statute is ambiguous or not. ADECO, Garcia are certainly binding on that point. Primal child abuse statute is ambiguous. And if it's ambiguous, the BIA applies its own precedent. To be fair, it's a little more nuanced, right? Those cases say that BIA, its capacious definition, will defer to that. They don't out and out say the phrase child abuse is ambiguous, do they? But the only way under Chevron, the Chevron framework, to defer to the BIA would be to first hold that the statute is ambiguous. Because if it's not ambiguous, you don't do any kind of deference. There's just a plain language answer, and that's the only answer. So you don't defer until you first find it's an ambiguous statute. With your time taking away, you've got no estoppel argument that just has a case to support it. You're not making that argument. Judge, we haven't really reiterated that argument, but I think what it shows is the record that even DHS below, before the immigration judge, said that this crime wouldn't be a deportable offense because it lacked an actual minor. Your client, no matter what we do, have an ineffectiveness claim? In other words, was he, when he pled guilty to this crime, was he told by his attorney that it is a removable offense? I believe he was told, Judge. It's not in the record. I believe he was told. He went to trial on this. If he was told that, then your argument, although legalistic, is sort of this counterfactual in terms. He pled knowing it was removable. He was told this qualifies. You're out. And yet you're here saying, somehow, no? Well, Judge, I mean. It's a little bit fanciful to be saying it's not fair to remove him. He pled knowing that consequence, and now he's out. It's not in the record whether he was told or not. But you just represented that, and I appreciate his counsel. I wasn't sure that's true. To be honest, I withdraw that representation. I did not represent him in the criminal court. I'm not sure if that's true or not. What I do know is that he went to trial on the charge. So whether he was told or not, he went to trial. He did not plead. He didn't plead. He did not plead. He went to trial, and the judge ordered four years of probation. Judge, I see my time is up. I reserve five minutes for rebuttal. Thank you, counsel. May it please the court, my name is Walter Bocchini for the respondent, attorney general. Your honors, I'll premise my arguments today by reiterating our position in the letter brief that we filed, that we do believe the court would benefit from supplemental briefing. Counsel, if you could keep your voice up, please. That the court would benefit from supplemental briefing on the issues that are before this court. But until now, the government was constrained in doing a full-throated argument on Loper Bright because we had a pending decision by the BIA that was issued just this last Friday. He filed the 28-J. Did you respond to the 28-J on Loper Bright? Yes. Well, we took our position on Loper Bright in our supplemental answering brief. So we're still going to be consistent with that. We believe that Loper Bright controls this case. It's just that there are nuanced arguments that come into, especially if the court moves on to the best reading of the statute. Which we're free to, right, and sure want to get it right. We don't want to deport people because they actually weren't convicted of a removal offense. Well, I think if the court finds that there's special justification to move to that aspect of the case, then yes. But our position is that Loper Bright, the Supreme Court instructed this court to treat Chevron-based cases as binding precedent, unless there's a special justification. But we can also, post Loper Bright, just give the best interpretation. Sure, it would help around the country to get the correct interpretation of what child abuse is. Well, I would say, well, the court has discretion. Of course, the court. So I don't really know why you need more time. What's the government's position? Child abuse, almost every circuit said that is ambiguous. And in the past, they deferred. Every circuit has said so. Now, you're the office that centralizes all of this. So if it's ambiguous, what's the best reading? Well, the best reading is that child abuse is broad enough to cover crimes where a person is targeting children. That's period. There is no actual child. Even if there is no actual child. So a potential effort to abuse a child does count. The government's position is that that falls within the broad definition. What's your best authority for that? Well, if we're going straight to the best reading of the statute, then I would say that this court's decision in Shroff actually helps the government. Because in the footnote, well, Your Honor, if I may just. Yeah, read it aloud. I'll read it out loud. Yeah. It's a hard case to decide. It's on footnote four of Shroff. It says that, and first, it characterizes the situation where there is a fictitious child as one that amounts to attempt. And then it says that the attempt may be impossible to commit because the conviction is procured as a result of an undercover sting operation is of no relevance to the INA. Those are the specific words in Shroff in discussing the very statute of conviction in this case. Now, Shroff, obviously, was dealing with Skid Row. I mean, solicitation of minor offenses, there are so many, sadly, on the internet. So many. And there's no court anywhere that's actually said other than that footnote in Shroff? Oh, there is another court, Your Honor. The Third Circuit has also said it. Was that Mondragon? Mondragon, that's right. But Mondragon was a Chevron case. Mondragon was a Chevron case, yes. But still, it's another positive authority. I mean, I read it as close as I could because you cited it as your only other positive authority. Sounds like you're well-prepared. Can you quote for me any sentence in Mondragon that actually gives us insight into how no child can somehow mean child abuse? Well, I mean, I will admit that Mondragon does not get into the nuance of that. But it does recognize that the Pennsylvania statute at issue there involved victims where the actor believed to be children, much like in Antico. So that's this. And Antico cited the Mondragon as well. Cited the authority in Pennsylvania, but the case didn't involve a fictitious child. I don't recall whether the Mondragon involved a fictitious child, Your Honor, in that sense. But the court, the Third Circuit, certainly was aware that the statute was that broad. The statute of conviction was that broad. Why would they have just given an advisory opinion? They quote the statute. It does say belief. You're right. But if it doesn't implicate the issue, that's why I asked you, is there anything you can quote where they say, and we think, that just attempting to abuse a child, turns out it's an adult, actually still means you're a child abuser, and we're going to deport you? No, Your Honor. I'm not going to go on that limb and say that there's something that I can quote specifically. So when you begin by saying, and responsibly, this is not criticism. I'm just trying to get my brain around it. When you begin by saying you need more time, you need more time, why? What are you studying? Well, no, Your Honor. I think that the best reading of the statute prong of Loper-Bry involves a comprehensive analysis of survey of state law, survey of federal law, involves the purposes behind the INA. Now, the board did make much of this in the Velazquez-Herrera case, but that wasn't with this specific issue in mind. So I think we'd have to re-evaluate those statutes. Now, what I will say is that, again, this case is not an attempt case. This solicitation is completed once the solicitation is made, but it is like attempt in many ways. And the Board of Immigration Appeals has since issued a D. Rodriguez decision, which is mentioned in the 28J letters. And there, the board found that attempt is included in crime of child abuse cases. And I think that the analysis and the reasons behind that are equally applicable here. And it's the same, and again, I'll go back to the straw footnote, is that it's the same issue there, where the board is saying that a defendant who targets children but doesn't complete the offense by pure happenstance shouldn't be rewarded, and that the INA would go against the purpose of the INA to do that. So I think that between D. Rodriguez and Shroff, we believe that there is a reading of the statute. There is a reading of the crime of child abuse, as it was in 1996, that would include attempt offenses in the same rationale would apply for cessation offenses that involved putative children. Well, basically, what the BIA had said, I think, in ADECA was that it sufficed to be maltreatment of a child. I mean, they sort of analyzed all this before it came up to us, correct? Yes, and I believe that ADECA also came to the same conclusion. Yes, we did, but we were obviously deferring. But again, the BIA had reached the conclusion that this statute was a categorical match, which means a sting operation, someone that's not actually a minor, posing as a minor, whatever it may be, when you commit the offense of online solicitation, it sufficed for the definition of child abuse. Now, again, if we didn't defer under Lopebright, it seems like it would help the government's position or strengthen ADECA's holding, wouldn't it? Well, I just think it would be much more straightforward for the court to apply Lopebright and say that this is still binding precedent. But if the court defers, I'm not in. Well, for us to disregard ADECA, we would have to disregard Garcia also. And can we do that as a panel? Well, I mean, Your Honor, it's not. We have to find that Lopebright basically superseded them, and we're going to go strike new ground. And that's why you want to do supplemental briefing and all that. It's not a question of disregarding it. These are the instructions of the Supreme Court how the courts should assess Chevron-based cases. The Supreme Court obviously was concerned that we have this whole body of law, Chevron-based cases, that would fall away under its holding Lopebright, that it was a world-ruling Chevron. And it went out of its way to say that no, that the courts should assess them on the statutory stare decisis, and they should remain good law absent special justification. Now, the court hasn't done that in any other case that I'm aware of. The cases that Petitioner has cited in his supplemental reply brief and 28J letters do not include any such instructions. And here, the court went out of its way. And it didn't even say that the cases should be held precedential and analyzed under stare decisis. It went, no, there should be statutory stare decisis, which is a stronger version of stare decisis. So I think that the Supreme Court signaling that Chevron-based cases should still be presidential, unless there's something very wrong with the decision. And in this case, there isn't. The case is consistent with the Third Circuit. It's not a case that has been overcome by any legal developments. And I would say that the legal developments have actually strengthened it in the matter of DeRodriguez, for example. You're talking about Addico. Addico, yes. So what is the government's position that we should follow Addico case close end of story, which is what the BIA did? Or is the government's position, let's investigate this under Loper-Bright and come up with a formulation of what the definition means? No, we are in the first position, the former. That's our position, because that's what the Supreme Court instructed in Loper-Bright. And we feel like we should take the Supreme Court at its word. That's really important for me to understand. First position, you want us to take the Supreme Court at its word and just give our best reading? Or you want us to say, we are bound by Addico. We can't give it our best reading. Our position is that the court should rule that it's bound by Addico. There are no special justifications to overrule Addico. So we are bound by it, even though Loper-Bright has removed the deference? That's right, Your Honor. What's your authority for that? The Supreme Court's instructions in Loper-Bright itself, that the court said. That precedent's still stare decisis. But if de novo reading of the statute, we disagree, I would think we are free to get it right. It can't be that every court forever is locked into a wrong reading of the statute. Is that your position? And if so, what case, other than the Supreme Court and that sentence, stands for that? Because I've already been doing revisitations of agency interpretations as a panel. I've been doing them. So what authority says I couldn't? Well, it's not that the court couldn't. Of course, the court could find the case is so wrong that it amounts to a special justification and then move to the best reading. That's for sure. That's an absolute. But the court shouldn't be, in every Chevron case, moving to that step. Because I agree. I would think it's just because we don't think it's wrong. But we do look at it to make sure we get the law right. Because the agency's out of the picture. If ambiguous, we read the statute. You're saying, oh, if ambiguous previously, agency said it wasn't, there's some residual, we've got to just keep sticking to the agency's view? That's hard for me to swallow. OK, so first point, we don't think a DECO is wrong. We think that it's correct reading of the statute. But the second position, even if it was wrong, even under stare decisis, the court doesn't overturn precedent just because a binding decision is wrong. And that's whether we're talking statutory stare decisis, whether we're talking about the traditional factor stare decisis. He can only go to the en banc court. We have to follow a DECO, even with the deference. Is that your position? That's his relief is the en banc. No, it's a little more nuanced than that. If the court was to conclude that a DECO is so wrong that it amounts to a special justification, then of course the court can proceed to the second step. And I'm asking you for the authority that it requires so wrongness as wrong. Well, the Supreme Court didn't outline specifically what special justification is. In prior cases, it has gone to whether the special justification would seem to me we're deporting someone who's a lawful resident. We're just kicking him out of the country even though we're acknowledging actually his crime doesn't qualify. How is that not a special justification? Well, Your Honor, I. If we read the statute and what he's convicted of didn't qualify, the government is saying that's not a special justification to not kick him out when people similarly situated never will be kicked out again. The way that the government reads a DECO, there has to be something more than just simply a disagreement with how the statute would be reinterpreted today. I'm not saying I disagree. If they didn't interpret it because they deferred, I'm not even disagreeing. I don't think it's an insult to that panel. We're just doing what the Supreme Court has told us to do. And I think you're saying it is the best reading. Implicit in a DECO was a reading. You're telling us today it's still the best reading. Instead of stick to an error. Well, I mean, Your Honor, again, it depends on the error. I think, well. But isn't this particularly salient given that the BIA has spoken of two minds on this very issue? I mean, there's inconsistency underlying the BIA's view of the statute, too. I would say that in this case, had not spoken in two minds. In matter of Humanae Sedio, as the court has recognized, there was no real analysis in that case. That was a CIMT case. Is that a special justification to revisit our deference to them? Well, again, I would say that if the only issue was whether there has been an error, there's been an error in a DECO decision, that wouldn't amount to special justification. That's the Loeb or Bright decision says so. Now, if the court finds that the DECO rule has been overcome somehow, then that would amount to special justification. Whether that is because of its workability concerns or because it's been overcome by law. Now, those two issues, which are the primary ways that the Supreme Court has found special justification, I think that a DECO easily survives as a precedential decision. Because it is a workable decision. It is a clear reading of, it's a clear application of the crime of child abuse statute. And it is consistent with D. Rodriguez and consistent with the Third Circuit in Mondragon. So we think that the government's position is that this decision, that this issue can be decided under the special justification prong, stare decisis prong of Loeb or Bright. To the extent the court feels that it needs to push further into the best reading of the statute, I think that is a comprehensive analysis that, obviously, is at the court's discretion. But the government would offer to do supplemental briefing on that to support this position on the best reading of the statute. While maintaining that a DECO is correct. We are not casting doubt on whether a DECO is correct. Did he plead to this? Or did he go to trial? He went to trial. Yes. So there was no advice given at the re-arraignment. So this wouldn't be implicating him in that insistence? I don't believe so, Your Honor. Yeah. And there are no other qualifying ones? The theft, the aggravation, despite all the flip-flopping? They all fell aside. And hence, why the Department of Homeland Security is eventually settled on this particular charge. And while there was some back and forth as to whether it could be sustained, as we pointed out in the brief, the immigration judge was soundly on the side that DECO controlled this issue. I may well agree that DECO does represent the best reading. And I'm very grateful that you're offering to actually give the government's opinion on that. Because I happen to think that post-Lippert-Bright, we've got to do the hard work. The courts have to do it. We can't just hide behind agency interpretation. That's good, bad, whichever outcome it is. So there's no insult to a DECO panel in my mind. So for one, we'll see if you get approval. But it would be valuable to me to know if the government thinks he actually was deported for a removable offense. Well, in that sense, Your Honor, we have no doubt that he was deportable for a removable offense. We believe that we have solid arguments for why the best reading of the statute is still consistent with the DECO. Well, I think that, no, well, it's going to fall in line with the attempt cases. But we want to, if possible, expand on that. Wouldn't that help? Because there are going to be people coming forward in the future. Last thing we want is everybody just citing a case that was a Chevron case. So it sure would help OIL nationwide to have a circuit actually give a best reading. And if it's attempt, and that's the way we go, potentiality of child abuse, as you heard me say, I can understand that. If the abuser intended to have a child, it's just luckily the government interceded. The issue that comes to mind as potentially being problematic is that the definition of what is a crime of child abuse is broad. And it has been accepted by, I believe, five court of appeals at this point. And so if the court was to do it anew, it would have to come up with a new generic definition of what is a crime of child abuse. And it would be doing so in assessing a solicitation crime, which is not the typical crime of child abuse. What I'm saying is that would really help everyone, defendants, petitioners, the government. Because good for the government, it's stinging people all over the country. These solicitations on the internet are really a large number of people. So really someone's going to have to answer the question, right? Yes, Your Honor. Sooner or later, someone is going to have to answer the question. And if the court is inclined to do so, again, the government stands on the position that ADICO is correct and that it would stand, even if the court proceeds to best reading of the statute. Are there any analyses that are in ADICO on the first instance? It's a sentence, right? At the end? It's more than a sentence. I mean, the Supreme Court. Tell me what the logic was. Free of Chevron. Well, the Supreme Court, this court recognized the issue in ADICO. I mean, that was brought up in the beginning of the decision. Because the beginning of the decision, when it outlined procedural history, it pointed out that the immigration judge had actually closed the case. Remind me what ADICO said that stands for the proposition that a child that doesn't involve a child is still child abuse. How did ADICO say that? Well, I think by outlining the statute, by pointing out that the statute does include victims where the actor believes they're under 17, and then stating it, this does not make the statute overbroad. Words to that effect. Please don't hold me to the specific language. But I think the court actually said that it doesn't make the statute overbroad, or it's not broader than the crime of child abuse. And to me, that was case closed, in the sense that that was a categorical. That was a finding that the statute of conviction is a categorical match to the generic definition of child abuse. That was very helpful. Very good dialogue. I appreciate it so much. Absolutely, Your Honor. These are nuanced cases. I appreciate the questions as well. And I would just point out, again, that the cases where this petitioner pointed out in his supplemental reply brief as to why this Loper-Bright is intervening law, none of those cases have the type of instructions that Loper-Bright has and how to treat Chevron-based cases post-Loper-Bright. And that Supreme Court went out of its way to say that statutory standardizes should be a consideration before moving on to the best reading of the statute. Thank you, counsel. Thank you, Your Honors. Rebuttal. Yes, Your Honors. Thank you. Petitioner agrees that after Loper-Bright, this court has to come up with the best interpretation. But I would counsel that Loper-Bright also does have to give us authority saying there is some special justification for us. Because we do really adhere to rule of orderliness. And if no other court has said the ADECO rule is wrong and the Jimenez rule is right, what's the special justification for us to get back into that mire? I would push back on that, Your Honor, that a special justification is required. What the Supreme Court said in Loper-Bright was that its prior decisions holding specific agency action was lawful are still entitled to statute statutory stare decisis. This court, as recently as Petway, I think, which was a 2024 case, I cited it in the 28J that was stricken. And then I tried to file a motion for leave to file it again. That case basically says that application of statutory stare decisis to circuit court decisions, the justification for doing so, is weak at best. And in that same 28J, I tried to cite to N. Ray Bonvillian, 19 Federal 4th 787, in which this court, without having to address the rule of orderliness, overruled its prior precedent because it had fallen out of line with Supreme Court precedent. And that was about subject matter jurisdictional rules, whether they're claims processing or jurisdictional. But if you look at the Supreme Court's cases on subject matter jurisdiction, they always counsel we're not overruling our prior cases on specific statutes. Holding those statutes were jurisdictional. Those are still entitled to statutory stare decisis. But this court, nonetheless, in N. Ray Bonvillian, had no problem overruling its prior cases. Now, Judge Higginson, you're right that we have, in this case, a lawful permanent resident who came to the United States when he was 12 years old, when he was 19, and just out of the house, he gets convicted of this offense. What you have in these sting operations is you had an undercover officer. He had a lot of encounters. We had a theft thing in there. There's drugs encounters. So it's not as if he's just pure as snow. That's correct, Judge. But there's also a number of mental health issues. He was on different medications for bipolar. You're right. Now, it's an undercover officer that creates a fake account stating they're 18 years old and puts it on a normal dating app. The record shows that Petitioner, in this case, was meeting adult women on that same app. So I think the account reached out to him. They're talking, exchanging nude photos, the whole nine yards. And then the account says, is it a problem that I'm just under 14? At that point, Petitioner says, no, that's not a problem and continues with the, that's a crime committed. But that's not child abuse. Now, my best proposition for that is the Texas Family Code. It's not child abuse under the definition of the Texas Family Code. And to me, it would be odd for this court. Just broadly, Texas Family Code, what's the case that says that's not child abuse? I wouldn't say it. I don't have a case for it. But I have the proposition. I have the citation, which is Texas Family Code 261.101 lists all the specific things that fall within child abuse. There are specific convictions that, per se, fall within child abuse. This is not listed in there. And if you go through one by one each provision, I don't see anywhere where a solicitation of an undercover officer posing as a minor would fall within abusing an actual child. There is no attempted abuse there. And during my last minute, I want to point out that the government has been inconsistent on its reading of attempts. I filed a 28J on matter of D. Rodriguez, which is before this court in another docket, in which the BIA held that attempt offenses do qualify. In that case, it was an attempted injury to an actual child offense. They said qualify. Now, there's long been an argument that attempted crime of child abuse offenses do not qualify. They said we said qualify? The BIA said qualify. Where's that case now? That case is before the Fifth Circuit. It's pending before the Fifth Circuit. And I filed a 28J on that. Now, the government's response to my 28J was that matter of D. Rodriguez did not apply, because this is not an attempt offense. And if you go into matter of D. Rodriguez, and my 28J is on that, you'll see that the board specifically said we're not addressing statutes in which the definition of a minor is broader than the generic definition of a minor. And that's how the board has previously interpreted this fictitious minor issue, that that made it broader because the definition was  My time is up, Your Honors. Thank you for your time. Counsel, I will tell you, my best recollection is, because I remember your request to file a 28J, or a 28J got filed, it was stricken, and then you filed something else. My best recollection is, among all my signings last night as I'm reading and ruling on motions, I think you may be able to file your 28J. I mean, I think I granted that motion. The court is going to take this matter under advisement, including the request from the government to file a supplemental briefing. So we're not granting that now, but I want you to know that'll be under consideration when we conference this case. Thank you, Judge. All right. Thank you both very much.